In re Terry Lewis CARUTHERS and
Vicki Lynn Caruthers, Debtors.

Terry Lewis CARUTHERS and Vicki
Lynn Caruthers, Movants,

v.

FLEET FINANCE, INC., Respondent.

Bankruptcy No. 87–09210–SWC.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 3, 1988.

Alan I. Seitman, Marietta, Ga., for movants/debtors.

Barry G. Irwin, John E. Tomlinson, P.C., Stone Mountain, Ga., for respondent Fleet Finance.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court is debtors' motion to avoid a lien held by Fleet Finance, Inc. ("Fleet"). This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(B) and (K). The court's findings and conclusions with regard to debtors' motion to avoid this lien are as follows:

On November 23, 1987, debtors filed a joint Chapter 7 petition. Schedules were filed on December 2, 1987, which listed the following household goods, supplies, and furnishings as exempt:

> Dining Room, Bedroom Suite, Living Room Suite, Washer/Dryer, T.V.'s, Stereo, Microwave; Misc. Household Goods. Market Value: $3,000.00.

Fleet, a creditor of debtors, held a nonpossessory, nonpurchase-money security interest in debtors' "RCA 25" color console television and Audiovox AM/FM dual cassette stereo with turntable and two speakers." The television and stereo system were collateral for a loan extended to debtors. They brought this motion to avoid Fleet's lien on the television and stereo system under Section 522(f) of the Bankruptcy Code because the lien impairs exemptions to which they are entitled.

Fleet filed a timely response to the motion to avoid lien and also served debtors with interrogatories. Debtors objected to the interrogatories; however, on February 2, 1988, this court directed debtors to respond thereto. Debtors' responses, containing a detailed list of exempt property, were filed with this court on February 16, 1988 and a copy was also mailed to the Probate Court of Cobb County, Georgia on February 12, 1988. The responses detailed a list of household goods claimed as exempt which included date purchased, original price, whether the item was new or used, purpose for which it was used, and the value of the item. At the hearing on

this matter, debtor Vicki Lynn Caruthers testified, and it is not disputed, that the total aggregate value of the household goods that she and her husband claimed as exempt was $3000.00 and that none of the individual items exceeded $200.00 in value.

### Background of Section 522

When a debtor files a bankruptcy petition, the bankruptcy "estate" comes into existence and all of the debtor's legal and equitable interests, with some exceptions not applicable here, become property of the estate. 11 U.S.C. Section 541(a). *Finance One v. Bland* (*In re Bland*), 793 F.2d 1172, 1173 (11th Cir.1986) (en banc); *Hall v. Finance One of Georgia, Inc.* (*In re Hall*), 752 F.2d 582, 584 (11th Cir.1985). Section 522(b) allows a debtor to exempt certain items from the estate as elaborated in Section 522(d). The debtor is entitled to use property that is exempted from the estate; however, liens that are valid in bankruptcy that cover exempt property are preserved and creditors may enforce their liens against the exempt property. 11 U.S. C. Section 522(c)(2). As part of the "fresh start" policy of the Bankruptcy Code, 11 U.S.C. Section 522(f) also allows a debtor to avoid certain types of liens to the extent that the lien impairs an exemption. *In re Bland,* 793 F.2d at 1173; *In re Hall,* 752 F.2d at 584. One lien avoidable by the debtor under this section is a lien on a nonpossessory, nonpurchase-money security interest in household furnishings, household goods, appliances and various other types of items held primarily for personal, family or household use of the debtor or a dependent.

Section 522(d) lists the types of items that debtors may exempt. Further, Section 522(b)(1) allows the states to "opt out" of this federal list of exemptions and prescribe their own list of exemptions. Georgia has availed itself of this opportunity and has enacted a statute that precludes resident debtors from using the federal exemptions. O.C.G.A. 44–13–100(b). As a result, Georgia residents may claim only those exemptions allowed by state law. *In re Bland,* 793 F.2d at 1174; *In re Hall,* 752 F.2d at 585.

The exemption at issue here is for personal, family and household goods. The Georgia exemption statute at issue is virtually identical to the federal exemption statute, except that the Georgia statute establishes a $3500.00 maximum on the total value of personal, family, and household goods that a debtor may exempt, whereas the federal maximum is $4000.00. [Compare O.C.G.A. 44–13–100(a)(4) with 11 U.S. C. Section 522(d)(3).]

First, the court notes that Fleet has not followed the proper procedure for objecting to debtors' exemptions. The lien avoidance provision of Section 522(f) is independent of objections to a debtor's list of exemptions. *See Meadows v. Barclays American Corp.* (*In re Meadows* ), 9 B.R. 882, 884 (Bankr.N. D.Ga.1981); 3 *Collier on Bankruptcy,* Section 522.29, p. 52291 (15th ed. 1988). Fleet's objections to debtor's claimed exemptions should properly have been made to the setting aside of the exempt property. Instead, Fleet apparently ignored the exemption process and now seeks to litigate objections to the exemptions through this motion for lien avoidance.

The proper procedure for claiming and objecting to exemptions is as follows: Section 522(*l* ) of the Bankruptcy Code provides that a debtor shall file a list of the property claimed as exempt. Bankruptcy Rule 4003(a) states that a debtor shall list the property claimed as exempt under Section 522 on the schedule of assets required to be filed under Bankruptcy Rule 1007. Section 522(*l* ) also provides that unless a party in interest objects, the property claimed as exempt on that list is exempt.

Pursuant to Bankruptcy Rule 4003(b), the trustee or any creditor may file objections to a debtor's list of property claimed as exempt within thirty days after the conclusion of the Section 341 meeting of creditors. If no objection is made to the setting aside of the exempt property within that time period, all parties in interest are barred from litigating that issue. 11 U.S. C. Section 522(*l* ) and Bankruptcy Rule 4003.

The record in this case reflects that debtors properly claimed and listed their exemptions on their schedules. The Section 341 [11 U.S.C. Section 341] meeting of creditors was originally scheduled for December 21, 1987, but was reset and held on January 12, 1988. Thus, the last day for parties in interest to file objections to the property claimed as exempt was February 11, 1988, thirty days thereafter. No objections were filed to debtors' claimed exemptions.

■ Fleet had notice, opportunity, and knowledge of debtors' claimed exemptions and made no timely objections thereto. The exemptions were duly allowed. 11 U.S.C. Section 522(*l*). It now seeks to circumvent this statutory scheme through its opposition to debtor's motion to avoid its lien. Since these debtors have properly claimed their exemptions, those items will be treated as exempt in this motion to avoid lien. Fleet, by failing to timely object, has waived any objections it had to the debtors' claim of exemptions, except as to those items which are subject to Fleet's lien that debtors seek to avoid.

### Fleet's Arguments

Fleet raises several issues in objection to debtors' motion to avoid lien which the court will now address.

First, Fleet argues that it is entitled to a jury trial on this motion to avoid lien. In *Nordberg v. Granfinanciera, S.A. (In re Chase & Sanborn Corp.)*, 835 F.2d 1341 (11th Cir.1988), the Eleventh Circuit considered defendants' demands for a jury trial in an action to avoid a fraudulent transfer. The court first emphasized that bankruptcy proceedings are "inherently equitable" in nature. *In re Chase & Sanborn Corp.* 835 F.2d at 1349. *See Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); *Ranch House of Orange-Brevard, Inc. v. Gluckstern (In re Ranch House of Orange–Brevard, Inc.)*, 773 F.2d 1166, 1169 (11th Cir.1985); *Stamps v. Sexton Bros. Tire Co. (In re Major Tire Co.)*, 64 B.R. 305, 306 (Bankr.N.D.Ga.1986); *Jefferson National Bank v.*

*I.A. Durbin, Inc. (In re I.A. Durbin, Inc.)*, 62 B.R. 139, 145 (S.D.Fla.1986).

The Eleventh Circuit went on to state, A cause of action to avoid a fraudulent transfer is a "core proceeding." 28 U.S. C. Sec. 157(b)(2)(H). A core proceeding is a proceeding created by the Bankruptcy Code and is brought in a bankruptcy court, and thus is inherently equitable in nature ...
This is in accord with *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) where the Supreme Court stated "[t]he Bankruptcy Act, passed pursuant to the power given to Congress by Art. I, Sec. 8, of the Constitution to establish uniform laws on the subject of bankruptcy, converts a creditor's legal claims into an equitable claim...." *Id.* 382 U.S. at 336–37, 86 S.Ct. at 476. If pursuant to this constitutional power, Congress may convert a creditor's legal right into an equitable claim and displace any seventh amendment right to trial by jury, Congress may likewise treat other core proceedings in bankruptcy such as actions to avoid fraudulent transfers or preferences.

*In re Chase & Sanborn Corp.*, 835 F.2d at 1349. (citations and footnote omitted). *See also Baldwin–United Corp. v. Thompson (In re Baldwin–United Corp.)*, 48 B.R. 49, 56 (Bankr.S.D.Ohio 1985) (no constitutional right to a jury trial in a core proceeding). The Eleventh Circuit thus emphasized that core proceedings in bankruptcy are equitable and, accordingly, denied the jury trial demand. *In re Chase & Sanborn Corp.*, 835 F.2d at 1350. *See also Huffman v. Perkinson (In re Harbour)*, 840 F.2d 1165 (4th Cir.1988).

Even in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which invalidated the existing scheme of jurisdiction in the bankruptcy courts, the Supreme Court specifically recognized that "restructuring of debtor-creditor relations ... is at the core of the federal bankruptcy power ..." *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871. The Court thus clearly recognized the authority of the

bankruptcy courts to adjudicate traditional core bankruptcy matters without a jury trial.

Determination and allowance of exemptions from property of the estate, as well as determination of the validity of liens, are fundamental bankruptcy matters ("core proceedings") that have been delegated by Congress to the bankruptcy courts for adjudication.[1] Such determinations directly affect the prompt and effectual administration of the estate and the debtor's "fresh start." As such, they are matters over which this court exercises exclusive control as a court of equity. *See Katchen v. Landy*, 382 U.S. 323, 336–37, 86 S.Ct. 467, 476–77, 15 L.Ed.2d 391 (1966). (No right to a jury trial exists in equitable actions.) *See also Huffman v. Brandon (In re Harbour)*, 59 B.R. 319, 325–26 (W.D.Va.1986), *aff'd*, 840 F.2d 1165 (4th Cir.1988); *Lerblance v. Rodgers (In re Rodgers & Sons, Inc.)*, 48 B.R. 683, 688–69 (Bankr.E.D.Okla. 1985). Section 522(f) thus protects a debtor's exemptions, his discharge, and effectuates the "fresh start" contemplated by the Bankruptcy Code by allowing the debtor to avoid certain liens on exempt property.

■ Based on the foregoing, this court concludes that the relief sought here, the avoidance of a lien, is a core proceeding and is equitable in nature. As an equitable action, this proceeding is not a suit at common law in which legal, as opposed to equitable, rights are to be determined. Neither the seventh amendment of the United States Constitution nor the Bankruptcy Code provide support for Fleet's demand for a jury trial in this case. *In re Chase & Sanborn Corp., supra, Moratzka v. Wencl (In re Wencl)*, 71 B.R. 879 (Bankr.D.Minn.1987); *Anderson v. Duvoisin (In re Southern Industrial Banking Corp.)*, 70 B.R. 196 (E.D.Tenn.1986); *Transpro Corp. v. NTW Inc. (In re NTW*

*Inc.)*, 69 B.R. 656 (Bankr.E.D.Va.1987). Accordingly, the court concludes that Fleet is not entitled to a jury trial of this motion to avoid lien.

■ Respondent makes a further constitutional argument by asserting that Section 522(f) effects an unconstitutional taking of property in violation of the fifth amendment. In *United States v. Security Industrial Bank*, 459 U.S. 70, 81–82, 103 S.Ct. 407, 413–35, 74 L.Ed.2d 235 (1982), the Supreme Court determined that Congress did not intend for Section 522(f) to apply retroactively to avoid liens. Further, there is conflict among the courts as to the applicability of Section 522(f) to the gap period between enactment and the effective date of the statute. However, the courts are in accord in applying and using Section 522(f) to avoid liens created *after* the effective date of that section. *See In re Bland, supra; In re Hall, supra; Maddox v. Southern Discount Co. (In re Maddox)*, 713 F.2d 1526 (11th Cir.1983). *See also* W. Homer Drake, Jr. & A.L. Mullins, Jr., *Bankruptcy Practice for the General Practitioner*, Volume 1, Section 6.03 at 6–11 (1987).

Furthermore, the Constitution specifically confers on Congress the power to establish uniform laws on bankruptcy throughout the country.[2] This authority "includes the power to discharge the debtor from his contracts and legal liabilities, as well as to distribute his property." *Hanover National Bank v. Moyses*, 186 U.S. 181, 188, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902). In enacting Section 522(f) Congress exercised this power.

In the present case, Fleet's lien was created in 1986, well after the effective date of Section 522(f). Based on the foregoing discussion, the court concludes that the application of Section 522(f) to debtor's con-

---

1. Bankruptcy judges are permitted to hear and finally determine all "core proceedings."
   Core proceedings include, but are not limited to—
   (B) allowance or disallowance of claims against the estate or exemptions from property of the estate,
   [and ...]

   (K) determinations of the validity, extent, or priority of liens ...
   28 U.S.C. Section 157(b)(2)(B) and (K).

2. "The Congress shall have Power ... To establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. Art. I, § 8, cl. 4.

tract with Fleet is not an unconstitutional taking of property violative of the fifth amendment.[3]

Next, Fleet argues for a narrow reading of Section 522 of the Bankruptcy Code and contends that the items in which it took a security interest, the television and stereo system, are not "household goods" within the meaning of that code section and thus cannot be claimed as exempt.

In determining what constitutes household goods for lien avoidance purposes, courts generally employ a case-by-case analysis. *See Smith v. Norwest Financial of Georgia (In re Smith )*, 57 B.R. 330, 331 (Bankr.N.D.Ga.1986). In making this determination, most courts have placed a liberal construction on the meaning of household goods and have held that the term includes "any personal property normally used by debtors or their dependents in or about their residence." *Heights Finance Corp. v. Barley (In re Barley )*, 74 B.R. 450, 452 (Bankr.N.D.Ind.1987); *In re Vaughn*, 64 B.R. 213, 215 (Bankr.S.D.Ind. 1986); *In re Bandy*, 62 B.R. 437, 439 (Bankr.E.D.Cal.1986); *Coleman v. Lake Air Bamk (In re Coleman )*, 5 B.R. 76, 79 (Bankr.M.D.Tenn.1980). *See also In re Shaffer*, 78 B.R. 783, 784–85 (Bankr.D.S.C. 1987); *Boyer v. ITT Financial Services (In re Boyer )*, 63 B.R. 153, 159 (Bankr.E.D.Mo. 1986) (holding that household goods "include more than those items that are indispensible to the bare existence of a debtor and his family. Items which, while not being luxuries, are convenient or useful to a reasonable existence must also be included.")

In addition, several courts have specifically held that a television and a stereo system fall within the meaning of household goods. *Lanzoni v. ITT Financial Services (In re Lanzoni )*, 67 B.R. 58, 60 (Bankr.W.D.Mo.1986) (stereo equipment and television are household goods); *In re*

*Vaughn*, 64 B.R. at 214–15 (stereo qualifies as a household good); *In re Boyer*, 63 B.R. at 154, 159 (color television and stereo system are household goods); *Beard v. Plan (In re Beard )*, 5 B.R. 429, 431–32 (Bankr.S. D.Iowa 1980) (television recording system and stereo sound system are household goods); *In re Coleman*, 5 B.R. at 79 (component stereo system, regardless of how elaborate, is a household good). In our complex society, items that were once regarded as luxuries in past years, particularly home entertainment items such as televisions and stereo systems, are now commonplace and are viewed as necessities to the well-being of the family unit.

■ Debtor, Vicki Lynn Caruthers, testified, without dispute, that the television and stereo system were utilized for personal, family purposes around the home. As such, these items would come within the definition of household goods as quoted above. This court adopts that definition and concludes that the television and stereo system are household goods under Section 522 and thus may be claimed as exempt.

■ Next, Fleet argues that the Georgia statutory procedures to claim exemptions apply and must be followed in the federal bankruptcy scheme. In this regard, Barry G. Irwin, counsel for Fleet, argued at the hearing that, pursuant to O.C.G.A. Section 44–13–4(b), the debtors must prepare a *minute, detailed* description of all property that they own, whether or not it is claimed as exempt.[4] That section provides as follows:

> The applicant shall accompany his petition with a schedule containing a minute and accurate description of all real and personal property belonging to the person from whose estate the exemption is to be made so that persons interested may know exactly what is exempted and what is not and also with a list of his creditors and their post office addresses,

---

3. The court notes that, although Fleet raised this issue in its answer and in a cursory manner at the hearing on this motion, Fleet did not address the issue in its brief filed on February 24, 1988.

4. At the hearing on this matter, Mr. Irwin cited the statute as O.C.G.A. Section 9–13–5(b). After the hearing, Mr. Irwin wrote a letter to the court in which he stated that he had given the incorrect citation and gave O.C.G.A. Section 44–13–4(b) as the correct citation. The court has used the correct citation in the text above.

if known, which must be sworn to by the applicant or his agent.

O.C.G.A. Section 44–13–4(b).

Mr. Irwin also cited O.C.G.A. Section 44–13–7 which provides for filing the schedule required by O.C.G.A. Seciton 44–13–4(b) with the probate court judge. However, this court notes that these two Georgia statutes have nothing whatsoever to do with federal bankruptcy law. Rather, the statutes deal with constitutional exemptions from the levy and sale of property. As a result, Fleet's reliance on them is misplaced. These statutory provisions simply do not apply in the context of federal bankruptcy cases.

Fleet also argues that another statute, O.C.G.A. 44–13–101, governs the procedures required to claim exemptions. That statute first provides that a debtor shall make a schedule of the property claimed as exempt. It also provides that the debtor return this schedule to the probate court judge. Fleet contends that a debtor in bankruptcy must comply with these two mandates of the Georgia statute in order to claim exemptions and asserts that debtors have not complied therewith.[5] Further, Fleet claims that the schedule required by the Georgia statute must be "an accurate, complete and detailed description of the property claimed as exempt." (Fleet's brief filed February 24, 1988, page 6.) The basis for this claim is various Georgia courts' interpretation of the sufficiency of the description of exempt property. *See Kendall v. Parker*, 146 Ga. 260, 91 S.E. 31 (1916); *Worley v. Arnold*, 74 Ga.App. 772, 41 S.E.2d 568 (1947); *Clark v. Prince*, 38 Ga.App. 412, 144 S.E. 40 (1928). *See also* O.C.G.A. Section 44–13–4(b). However, the court notes that the cases cited by Fleet are rather old, predating the Bankruptcy

Code and, obviously, were not decided in the context of the Code.

■ Further in this regard, the court would emphasize that the Bankruptcy Code and Rules prescribe the method to be employed in claiming exemptions in bankruptcy cases. For example, Section 522($l$) requires that the debtor file with the bankruptcy court a list of property that is claimed as exempt under Section 522(b). Bankruptcy Rule 4003, which refers to Bankruptcy Rule 1007, and Official Bankruptcy Form No. 6 provide details of how this is to be accomplished. The federal statute, rules and forms thus prescribe the procedure for claiming exemptions in bankruptcy cases. To the extent that the Georgia statute attempts to alter this procedure, it is in conflict with the federal provisions. Pursuant to the supremacy clause, conflicts between state and federal law must be resolved in favor of the federal provision. U.S. Const., Art. VI, cl. 2. *See also Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *In re Hall*, 752 F.2d at 586, footnote 4. As the Eleventh Circuit recently emphasized in *Goerg v. Parungao (In re Goerg)*, 844 F.2d 1562 (1988), federal bankruptcy law preempts state law, and the power to enact bankruptcy laws, a power granted to Congress, is restricted only by the Constitution's substantive guarantees.

Thus, this court concludes that the federal Bankruptcy Code, Rules, and Official Forms, rather than Georgia law, apply and control in prescribing the procedure whereby exemptions are to be claimed in this case.[6] As a result, debtors in bankruptcy are *not* required to comply with O.C.G.A. 44–13–101.

---

**5.** The primary purpose underlying O.C.G.A. 44–13–101 and its recording requirement is to provide notice to creditors. Congress has made provision for notice to creditors through the provisions of Section 521 of the Bankruptcy Code and Bankruptcy Rules 1007 and 4003.

**6.** At the hearing on this matter, Alan Seitman, counsel for debtors, stated that he had mailed a copy of a list of debtors' exempt property to be filed with the clerk of the Probate Court of Cobb County, Georgia. (Debtors' Exhibit # 1) *See* O.C.

G.A. 44–13–101. A copy of that list has likewise since been filed with this court on February 16, 1988. That list elaborates in great detail the property that debtors claim as exempt. Thus, although the federal bankruptcy provisions, rather than Georgia law, control in determining the proper procedures to be followed in order for a debtor to claim exemptions in bankruptcy, debtors have complied with the Georgia statute and case law.

Even under the Bankruptcy Act, bankruptcy courts did not require debtors to follow state procedures regarding the setting aside of homesteads as exempt property. *In re Cotton,* Bankruptcy No. B76–2311A, at page 3 (Bankr.N.D.Ga. Feb. 3, 1978) (Judge A.D. Kahn). Furthermore, as recognized by the Fifth Circuit "[t]he allowance to bankrupts of their exemptions by bankruptcy courts is recognized as equivalent to setting apart of exemptions in proceedings in state tribunals." *Clark v. Nirenbaum,* 8 F.2d 451, 452 (5th Cir.1925).[7] Thus, it is the federal bankruptcy provisions, rather than state law, that control the procedure for claiming exemptions. *See also In re Lynch,* 101 F. 579 (S.D.Ga. 1900).

■ The Bankruptcy Code does allow the states to "opt out" and supply their own list of types and amounts of assets that may be claimed as exempt. However, as noted, the Bankruptcy Code, Rules and Official Forms prescribe the methods by which these exemptions are to be claimed in a bankruptcy case. The "opt out" is thus limited to *types* and *amounts* of exempt property. As the Eleventh Circuit stated in *In re Hall, supra,*

> In granting the states the power to opt out of the federal list of exemptions, Congress did not appear to place any limits on the states' ability to do so. This broad grant of power, however, does not mean that Congress authorized the states to enact legislation that conflicts with any other provision of the Bankruptcy Code. Rather, the import of the provision is merely that a state may decide to require that its debtors rely upon state-defined exemptions, instead of the list of federal exemptions contained in section 522(d).

*In re Hall,* 752 F.2d at 587 (footnote omitted).

■ The court in *Hall* went on to hold that O.C.G.A. Section 44–13–100 was an attempt to opt out of Section 522(f) but concluded that Georgia lacked the authority to do so under the Bankruptcy Code. *In re Hall,* 752 F.2d at 586–88. In an *en banc* decision, the Eleventh Circuit in *Finance One v. Bland (In re Bland ),* 793 F.2d 1172 (11th Cir.1986) revisited this issue and modified this holding. The court concluded that it did not have to reach the question of whether a state *may* override Section 522(f). It found that Georgia only intended to opt out as to the *amounts* of property that a debtor may claim as exempt but did not intend to opt out of Section 522(f). *In re Bland,* 793 F.2d at 1175–76. Therefore, the Section 522(f) lien avoidance provision is available to debtors claiming under the Georgia exemption statute.

The court must next consider whether debtors have followed the procedures prescribed by the Bankruptcy Code, Rules, and Official Forms for claiming exemptions. In this regard, the court notes that debtors filed their Chapter 7 petition on November 23, 1987. Their schedules were filed on December 2, 1987, and listed various types of household goods claimed as exempt. The schedules are in substantial conformity with Official Bankruptcy Form No. 6. The court thus concludes that, in completing the schedules, debtors complied with the requisite provisions of the Bankruptcy Code, Rules, and Official Forms.

Fleet, however, argues that debtors have not complied with Bankruptcy Rules 4003 and 1007. It contends that debtors did not file a "complete listing" of exempt property until on or about February 16, 1988 and argues that this was not timely. If Fleet desired to object to the list of property claimed as exempt, it was required to do so within the time provided by Bankruptcy Rule 4003(b). Having failed to timely object, Fleet has waived its right to object and is estopped to challenge the listing.[8]

---

7. Pursuant to *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

8. In addition, there is case authority that a debtor's failure to claim a particular item as exempt is "irrelevant to the application of section 522(f)." *Yamamoto v. City Bank of Honolulu (In re Yamamoto ),* 21 B.R. 58, 59 (Bankr.D.Hawaii 1982). That court held that a debtor can avoid a lien to the extent that it impairs an

Furthermore, even if that original list of exemptions was insufficient, debtors filed a response to Fleet's interrogatories on February 16, 1988 which elaborated in detail the type and amount of items claimed as exempt. That filing is sufficient to constitute an amendment of debtor's claimed exemptions and will be treated as such.[9] *See In re Vaught*, 36 B.R. 790 (Bankr.D.Idaho 1984). (The court allowed debtors to amend their claimed exemptions pursuant to Bankruptcy Rule 1009 which provides that an amendment may be made at any time as a matter of course before the case is closed.) In addition, debtors filed the list of exemptions with the Probate Court of Cobb County, Georgia. As this court has already determined, such filing is not required in the federal bankruptcy setting, but even if it were required, debtors have complied therewith.

At the hearing on this matter, counsel for Fleet cited *Wallis v. Clerk, Superior Court of DeKalb County*, 166 Ga.App. 775, 305 S.E.2d 639 (1983). The court questioned Mr. Irwin about that case in the following exchange:

MR. IRWIN: I would cite the court to a Georgia Court of Appeals case that came out subsequent to that case [*Maddox v. Southern Discount Co. (In re Maddox)*, 713 F.2d 1526 (11th Cir.1983)], *Wallace* [sic] *versus the Clerk of the Superior Court of DeKalb County* found at 166 Georgia Appeals, 775—[305 S.E.2d 639]

THE COURT: Wasn't that case rejected by the 11th Circuit? Wasn't the holding in that case rejected by the 11th Circuit?

MR. IRWIN: Your Honor, I don't know.

THE COURT: Have you shepherdized [sic] it?

MR. IRWIN: No, sir, I haven't.

(Transcript of February 16, 1988 hearing on motion to avoid lien, pages 13–14, hereinafter cited as Transcript, page —.)

Nevertheless, counsel proceeded to argue the case as follows:

The last full paragraph of the opinion is what I was citing to the Court where it states: "A bankrupt is entitled to claim a homestead exemption only from his aggregate interest in real property", citing the Official Code of Georgia, Section 44–13–100, subsection a. This means that only the unencumbered portion of the property is to be counted in computing the value of the property for purposes of determining the exemption, and they cite American, or it's AmJur 2nd, Volume Nine, Section 526 Bankruptcy Section 315, and the Court states: "Appellant had no aggregate interest in the property against which to assert his claim to homestead exemption".

(Transcript, page 15).

Fleet argues that debtors had no "interest" in property encumbered by a nonpossessory, nonpurchase-money security interest and, accordingly, cannot use Section 522(f) to avoid a lien. In *Wallis*, the court considered the Georgia homestead exemption, O.C.G.A. Section 44–13–100(a)(1), which allows the debtor to claim an exemption only in his "aggregate interest." The Georgia Court of Appeals held that only the unencumbered part of debtor's property is included in computing the value of the debtor's interest in the property. As a result, because debtor's obligation exceeded the value of the property, the court held debtor had no interest therein and could not claim an exemption. *Wallis*, 166 Ga. App. at 776, 305 S.E.2d 639.

In *In re Bland, supra*, the Eleventh Circuit considered the application of *Wallis* in the context of a motion to avoid a lien. The court held as follows:

*Wallis* is irrelevant to the issue before us because it involved a *purchase money* security interest. Section 522(f) allows the debtor to avoid "a nonpossessory, nonpurchase-money security interest"; it is thus unavailable to a debtor such as Wallis, whose exempt property was encumbered by purchase money liens. Because Wallis could not have avoided the

---

exemption to which the debtor is entitled to exempt under Section 522(b) and, as a result, actual exemption is not necessary.

**9.** As previously elaborated, the list was filed as part of the discovery process in response to Fleet's interrogatories.

liens on his house, he indeed had no "interest" to exempt. By contrast, in the Blands' case, appellant's security interest is not a purchase money interest and the Blands therefore had an "interest" in the property. Accordingly, section 522(f) was available to set aside the lien, and once the lien has been set aside the property is no longer encumbered; hence the exemption, as set forth in Georgia law, is available....

We therefore reject appellant's proposition that a Georgia debtor has no "interest" in property encumbered by a nonpossessory, nonpurchase-money security interest.

*In re Bland,* 793 F.2d at 1175 (footnote omitted). The court went on to affirm the bankruptcy court's avoidance of the lien.

Apparently, Fleet's counsel was either unaware of or chose to disregard the Eleventh Circuit's holding on this question. It appears that he failed to conduct a reasonable inquiry as to the factual and legal viability of his arguments in opposition to this motion to avoid lien. *See Donaldson v. Clark,* 819 F.2d 1551, 1555–64 (11th Cir. 1987); Bankruptcy Rule 9011. As previously elaborated, some of these arguments have already been rejected by the Eleventh Circuit while others have no relation to federal bankruptcy law. It appears that no significant effort has been made to ascertain the current state of the law and that counsel for Fleet has failed to conduct a reasonable inquiry as to the facts and the law.

The court certainly does not desire to inhibit attorneys from vigorously representing clients and advancing well-grounded arguments based on a reasonable inquiry of the facts and the law. However, the court is concerned that present counsel may have exceeded these parameters. *See Donaldson v. Clark,* 819 F.2d at 1555–64; Bankruptcy Rule 9011. Accordingly, the court by separate order will schedule a hearing to determine whether it should impose sanctions in this regard.

Based on the foregoing reasoning, the court concludes that debtors may avoid Fleet's nonpossessory, nonpurchase-money

security interest in the television and stereo system. Accordingly, it is

ORDERED that Fleet Finance, Inc.'s nonpossessory, nonpurchase-money security interest in debtors' television and stereo system is AVOIDED pursuant to 11 U.S.C. Section 522(f).

IT IS SO ORDERED.